**R23 LAW APC**
Peng Shao (319624)
Peng@R23Law.com
Hoosai Kabiri (319400)
Hoosai@R23Law.com
633 West Fifth St. 26th Floor
Los Angeles, CA 90071
Tel:  888-533-2948
Fax: 415-558-0230

*Attorneys for Plaintiff Allan Aguiluz*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALLAN AGUILUZ**, an individual;<br><br>Plaintiff,<br><br>v.<br><br>**GOLDMAN SACHS BANK USA; APPLE INC.; GREEN DOT BANK;** and **DOES 1 to 50,** inclusive;<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1. ELECTRONIC FUNDS TRANSFER ACT;<br>2. CALIFORNIA COMMERCIAL CODE.<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT FOR DAMAGES

Plaintiff Allan Aguiluz ("Plaintiff") files this Complaint and Demand for Jury Trial against Defendants GOLDMAN SACHS BANK USA ("Goldman Sachs"); APPLE INC. ("Apple"); GREEN DOT BANK ("Green Dot"); and DOES 1 to 50, inclusive (collectively "Defendant" or "Defendants"), and based on information and belief, hereby alleges and complains as follows:

## INTRODUCTION

1. This action arises from a scenario that *can* happen to any modern American consumer — but unfortunately and unluckily for Plaintiff — it happened to him.

2. Like countless modern American consumers, Plaintiff uses his iPhone's Apple Pay financial features and products, including Apple Pay and the Apple Pay Savings Account.

3. In other words, Plaintiff relied upon Defendants Apple and its banking partners Goldman Sachs and Green Dot to keep his money safe.

4. However, Defendants failed their duties as required by the law.

5. On or about October 4, 2024, Plaintiff's iPhone was stolen while attending a friend's wedding festivities in New Orleans. The unknown thief then executed multiple unauthorized electronic fund transfers from Plaintiff's Apple Savings Account.

6. Upon discovery, Plaintiff immediately reported the fraudulent transactions with both the New Orleans Police Department and with the Pasadena Police Department. Plaintiff also repeatedly disputed these transactions with Defendants.

7. However, in addition to failing to protect Plaintiff from the initial fraudulent transactions, Defendants neglected to conduct reasonable investigations as required by law and refused to correct the fraudulent transactions, despite Plaintiff providing sufficient supporting documentation, including police reports, in multiple disputes.



8. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered real damages, endured emotional distress, and sustained loss of his creditworthiness.

9. Plaintiff now brings this action for violations of (1) the Electronic Fund Transfers Act, 15 U.S.C. § 1693, *et seq*. ("EFTA") and (2) the California Commercial Code § 11201, *et seq*. ("CCC").

10. Plaintiff now seeks actual, statutory, civil, and punitive damages for the harm that he has suffered.

11. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

13. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

14. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

15. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C. § 1681, and under 28 U.S.C. § 1332 due to diversity of citizenship.

16. Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court, and this case involves the violation of Federal statutes.

17. Because all Defendants conduct business within the State of California,



personal jurisdiction is established.

18. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

19. Plaintiff Allan Aguiluz is a natural person and resident of Pasadena, California.

20. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); 15 U.S.C. § 1681a(c); and, 15 U.S.C. § 1692a(3).

21. Defendant Goldman Sachs is an out-of-state Stock Corporation, with its principal place of business in New York, New York, doing business in the State of California as a bank, and as a provider of credit card and bank accounts to consumers.

22. Defendant Apple is an in-state Stock Corporation, with its principal place of business in Cupertino, California. Apple partners with financial institutions, including Goldman Sachs, to offer financial products and services such as the Apple Card and Apple Pay. Through its collaboration with Goldman Sachs, Apple functions as a co-provider of the Apple Card, which extends credit to consumers.

23. Defendant Green Dot Bank is an out-of-state Federal Savings Bank headquartered in Austin, Texas, doing business in the State of California as a provider of prepaid debit cards, banking services, and other financial products to consumers.

24. Defendants Goldman Sachs and Green Dot Bank (collectively the "Bank Defendants") are also financial services providers that supports Apple's payment processing systems, including financing options and backend banking services related to Apple's product sales and digital payment solutions. This interconnection establishes Apple's role in facilitating credit-related and financial



transactions impacting consumers within the State of California.

25. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names, pursuant to the CCP § 474. Plaintiff is informed and believes, and thereon alleges that each Named Defendant and each Defendant designated as a Doe is involved in or is in some manner responsible as an officer, director, managing agent, principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third-party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

## **FACTUAL ALLEGATIONS**

26. Plaintiff Allan Aguiluz is a physician that has dedicated his life to helping patients here in Los Angeles. After immigrating to America from his homeland of Honduras, he was proud to complete his residency at USC California Hospital Medical Center, which primarily focuses on serving the indigent and underserved community of East Los Angeles.

27. Plaintiff is also a victim of financial fraud and theft.

28. Plaintiff, like countless American consumers, depends on Defendants[1] to keep his money safe in usage of Defendants' Apple Pay and Apple Savings Account products.

## INITIAL FRAUD

29. On the evening of October 4, 2024, while attending a wedding in New

---

[1] Defendants Goldman Sachs and Green Dot are Apple's banking partners and essential to the Apple Pay and Apple Savings Account products.

Orleans, Plaintiff's iPhone was stolen by an unknown fraudster.

30. The unknown fraudster then proceeded to execute multiple unauthorized electronic fund transactions to steal money from Plaintiff:

    a. A $10,000 transfer was successfully made from Plaintiff's Apple Savings Account bearing Acct No. xxxxxxxx5423 (the "Account") to an unrecognized Apple Cash account (the "Fraudulent Apple Cash Account".

    b. Three additional transfers in the amounts of $10,000, $10,000, and $5,000 from the Account to the Fraudulent Apple Cash Account were also attempted, but these transactions were declined.

    c. Fraudulent transactions were also made on Plaintiff's accounts at managed by US Bank and Bank of America; however, those institutions either declined these transactions or resolved the disputes promptly.

31. Plaintiff did not authorize these transactions; Plaintiff did not consent to someone else authorizing these transactions; and Plaintiff never provided Defendants consent to have someone execute these transactions on Plaintiff's behalf.

<u>REPORTING THE FRAUD AND INITIAL DISPUTES</u>

32. On October 5, 2024, shortly after discovery of the fraud, Plaintiff filed a police report with the New Orleans Police Department (Tracking No. T243920).

33. Also on October 5, 2024, Plaintiff contacted Goldman Sachs' customer service department via telephone and email to report the fraudulent transactions and submit supporting documentation. Plaintiff repeatedly contacted Goldman Sachs multiple times via telephone and email to dispute the fraud since this initial reporting.

34. On October 7, 2024, Plaintiff filed an in-person report with the Pasadena Police Department (Police Report No. P2401-90147).

35. On October 9, 2024, Plaintiff filed an FTC Affidavit regarding the



fraudulent transactions (FTC Report No. 177582918).

## FORMAL DISPUTES

36. In addition to disputing these transactions over the phone and email, on October 29, 2024, Plaintiff sent a formal written dispute to Defendants with supporting documents, including the police reports.

37. However, Defendants refused to help and continued to deny Plaintiff's disputes.

38. On November 5, 2024, Plaintiff sent another formal written dispute to Defendants, providing further documentation and reiterating his position. Again, Defendants refused to help.

39. Finally on January 15, 2025, Plaintiff sent a third and final formal written dispute to Defendants. Again, Defendants refused to help.

## DEFENDANTS' UNLAWFUL CONDUCT

40. Defendants failed to prevent the execution of fraudulent transactions on Plaintiff's account.

41. Despite Plaintiff's quick and repeated reporting of the fraudulent transactions, as of the date of filing of this action, Defendants have failed to adequately investigate the fraud and compensate Plaintiff for damages suffered.

42. Defendants' repeated responses were to deny the disputes, stating that the funds were transferred to an Apple Cash account associated with Plaintiff.

43. As of the date of this filing, Defendants have failed to adequately respond to any of Plaintiff's multiple, electronic, phone, or mailed disputes.

## ACTUAL DAMAGES

44. As a direct result of Defendants' unlawful actions, omissions, and inaction, Plaintiff has suffered damage by loss of money, credit worthiness, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment, as well as physical manifestations of these emotional states. Plaintiff has spent



substantial time collecting evidence, filing disputes, and engaging with Goldman Sachs, only to be met with dismissive and unhelpful responses. All such damages have been suffered in the past, are continuing to be suffered, and such damages will continue in the future.

## FIRST CAUSE OF ACTION

Violation of the Electronic Funds Transfer Act (EFTA)

*[Against All Defendants]*

45. Plaintiff hereby re-alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

46. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

47. The primary objective of EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

48. Financial institutions have error resolution obligations pursuant to Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

49. Plaintiff is a "consumer" pursuant to 12 C.F.R. § 1005.2(e).

50. Goldman Sachs is a "financial institution" pursuant to 12 C.F.R. § 1005.2(i), and a "person" pursuant to 12 C.F.R. § 1005.2(j).

51. Apple is a "financial institution" pursuant to 12 C.F.R. § 1005.2(i), and a "person" pursuant to 12 C.F.R. § 1005.2(j).

52. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

53. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for

the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any P2P or mobile payment transactions that meet the definition of EFT. 12 C.R.F. 1005.3(b)(1)(v); *id.*, Comment 3(b)(1)–1ii.

## INVESTIGATION RESULTS

54. "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. ] § 1693d(a), (c), or (d) of this title or notification pursuant to [15 U.S.C. ] § 1693(d) of this title, receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. ] § 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

55. After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id*.

56. If a financial institution provides a provisional credit in the first 10 days for the amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id*. § 1693f(c).

57. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

58. According to the CFPB and FDIC, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.

59. In particular, Comment 1005.2(m)–3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.

60. Here, an unknown actor gained access to Plaintiff's Goldman Sachs Apple Savings account and initiated financial transactions via EFT without his authorization.

61. Plaintiff notified Goldman Sachs of these errors within sixty (60) days of their appearances on Plaintiff's account.

62. After receiving notice of the unauthorized EFT on Plaintiff's account, Goldman Sachs erroneously concluded that the unauthorized EFT was not the result of an error.

63. As a direct and proximate result of the conduct of Goldman Sachs, Plaintiff was unable to reclaim funds that were fraudulently taken from his account within the authorized period for error resolution.

64. Upon information and belief, Goldman Sachs knowingly and willfully failed to fulfill their obligations to investigate Plaintiff's unauthorized transactions and instead summarily concluded that the transfer of funds was not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

65. Upon information and belief, Goldman Sachs intentionally determined that the unwanted transfers of funds were not in error due to, at least in part, the Goldman Sachs' financial self-interest, i.e. to avoid their liability to Plaintiff for the unauthorized transfer pursuant to Regulation E.

66. Goldman Sachs' refusal to completely reverse or refund funds to Plaintiff as required under Regulation E, § 1005.6 and 15 U.S.C. § 1693(g).

67. Pursuant to 15 U.S.C. § 1693f(d), if a financial institution determines after conducting an investigation that an error did not occur, it must, upon receipt of a request from the consumer, promptly deliver to the consumer reproductions of all documents with the financial institution relied on to conclude that such error did not occur.

68. Plaintiff demanded the investigation documentation in his formal dispute letters, however, Goldman Sachs never provided these documents.

69. As a result of each of violation, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); treble damages pursuant to 15 U.S.C. § 1693f(e); limitation of liability under 15 U.S.C. § 1963g; and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## SECOND CAUSE OF ACTION

Violations of California Commercial Code § 11201

*[Against All Defendants]*

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. Goldman Sachs is a "receiving bank" under California Commercial Code § 11103.

72. Apple is a "receiving bank" under California Commercial Code § 11103.

73. Plaintiff is a "customer" as defined by California Commercial Code § 11105(a)(3).

74. The request to have a wire transfer initiated was a "payment order" under California Commercial Code § 11103.

75. Plaintiff and Defendants did not have an agreed upon "security procedure" as defined under California Commercial Code § 11201.

76. As explained above, Plaintiff did not approve of the wire transfer,

which was initiated without Plaintiff's consent. Thus, the transfer was not an authorized transfer under California Commercial Code § 11202(a).

77. Plaintiff notified Goldman Sachs of the fact that the wire transfer was unauthorized within statutory period defined in Section 11204 of the Commercial Code.

78. Defendants are obligated to refund said fraudulent wire transfer to Plaintiff under Section 11204 of the Commercial Code. Defendants failed to do so.

79. As a result of Defendants' failure to adhere to these statutory requirements Plaintiff was damaged in the amount of $10,000.00 plus interest as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For declaration that Defendants' practices violate the law;
2. For actual, compensatory, special, and general, damages in an amount according to proof;
3. For punitive damages in an amount according to proof;
4. For statutory penalties and punitive damages for each separate statutory violation where allowed by statute;
5. For pre- and post- judgment interest;
6. For reasonable attorney's fees and costs;
7. For injunctive relief as applicable; and
8. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

DATED: February 11, 2025

Respectfully submitted,

BY: _____
Peng Shao, ESQ

**R23 LAW APC**
Peng Shao
peng@R23Law.com

*Attorney for Plaintiff Allan Aguiluz*



# ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.